Jane Etta HARRIS, Appellant,

v.

The STATE of Texas, State.

No. 2–03–136–CR.

Court of Appeals of Texas, Fort Worth.

Jan. 19, 2006.

Don Hase, Arlington, for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Anne Swenson, and David M. Curl, Asst. Dist. Attys., Fort Worth, for Appellee.

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

### OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

LEE ANN DAUPHINOT, Justice.

In its most recent petition for discretionary review, the State complains that "Appellant certainly never preserved the outlandish *Franks* violation invented and sustained by the majority" and contends that "[t]he majority's feeble efforts to defend its misreading of the affidavit cannot withstand scrutiny," resulting in a holding that is "ill considered in several respects—and made all the more so by the majority's repeated refusal to acknowledge the State's argument" that "Appellant failed to preserve *any Franks* complaint in the trial court." The State also complains that, by referring to the affiant by name, this court "savages him."

Because our opinion of November 23, 2005 was apparently inartfully worded, pursuant to rule of appellate procedure 50,[1] we withdraw that opinion and judgment and substitute the following. In deference to the State's sensibilities, we now refer to the affiant as Officer X.

A jury found Appellant Jane Etta Harris guilty of possession of a controlled substance and assessed her punishment at ten years' imprisonment. The trial court sentenced her accordingly. In three points, Appellant challenges (1) the trial court's denial of her motion to suppress based on an invalid search warrant, (2) the trial court's refusal to conduct an in-camera

---

1. *See* Tex.R.App. P. 50.

hearing related to a confidential informant, and (3) the trial court's denial of Appellant's requested article 38.23 jury instruction. Because we hold that the trial court abused its discretion by denying Appellant's motion to suppress, we reverse the trial court's judgment and remand this case for a new trial without the illegally seized evidence.

## BACKGROUND FACTS

In June 2001, the Fort Worth Police Department received a Tarrant County Crime Stoppers tip that drugs were being sold out of Apartment No. 158 at 5308 East Rosedale in Fort Worth. Officer X, the Fort Worth police officer assigned to investigate the complaint, said that he observed traffic which he described as consistent with narcotics dealings coming from the general area of the apartment. He then arranged for a confidential informant to attempt a narcotics purchase from the apartment. After Officer X used the confidential informant to conduct an undercover buy, he obtained a search warrant for the apartment. The police executed the search warrant and recovered over four grams of cocaine.

In a two-count indictment, Appellant was charged with possession of cocaine with intent to deliver and possession of cocaine. Prior to trial, Appellant filed a motion to disclose the identity of the confidential informant and a motion to suppress, alleging that the search warrant

was illegally issued because, among other things, the magistrate was misled by information in the affidavit that the officer knew was false or would have known was false except for his reckless disregard for the truth. After a hearing, the trial court denied both motions.

## MOTION TO SUPPRESS

### Parameters of Review

 When reviewing a motion to suppress evidence obtained pursuant to a search warrant, the trial court is to look to the totality of the circumstances as contained within the four corners of the affidavit.[2] Our review is limited to examining the four corners of the affidavit to determine whether probable cause existed.[3] In this review, we are to determine whether there was a fair probability, not an actual showing, that contraband or evidence of a crime would be found in a particular place in light of the totality of the facts set forth in the affidavit.[4] The officer's affidavit must have provided the magistrate with a substantial basis for concluding that a search would uncover evidence of wrongdoing.[5] The informant's reliability or basis of knowledge is relevant in determining the value of his assertions.[6] Corroboration of the details of an informant's tip through independent police investigation can also be relevant in the magistrate's determination of probable cause.[7]

2. *Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983).

3. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; TEX.CODE CRIM. PROC. ANN. art. 18.01(b) (Vernon 2005); *Jones v. State*, 833 S.W.2d 118, 123 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993); *cf. Cates v. State*, 120 S.W.3d 352, 355 n. 3 (Tex.Crim.App.2003) (setting forth the distinction between a suppression hearing and a *Franks* hearing, at which addi-

tional evidence may be admitted to show the falsity of assertions within an affidavit).

4. *See Gates*, 462 U.S. at 239, 103 S.Ct. at 2332; *Hennessy v. State*, 660 S.W.2d 87, 89 (Tex.Crim.App. [Panel Op.] 1983).

5. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331.

6. *Id.* at 230, 103 S.Ct. at 2328.

7. *Id.* at 241–42, 103 S.Ct. at 2334.

Likewise, the affidavit should set forth the foundation for the officer's belief in an informant's credibility and veracity. However, "a deficiency in one may be compensated ... by a strong showing as to the other, or by some other indicia of reliability," all of which are relevant considerations under the totality of the circumstances.[8] Additionally, if a defendant establishes by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the affidavit and that, without the affidavit's false statement, it is insufficient to establish probable cause, the search warrant must be voided.[9] As a reviewing court, we are to ensure that, after excluding statements shown by a preponderance of the evidence to be false, the magistrate had a substantial basis for concluding that probable cause existed.[10]

The Texas Constitution places a heavy burden on the courts of appeals. Once we determine the facts of a specific case, "the decision of [the court of appeals] shall be conclusive on all questions of fact brought before [us] on appeal or error."[11] We therefore cannot rely on a higher court to correct any misunderstanding of the facts of which we may be guilty. Because of this unique duty, we have carefully examined the record to glean the facts actually established therein. Similarly, the fact that legal determinations are properly reviewed by the Texas Court of Criminal Appeals does not decrease our equally heavy burden to apply the law in accordance with statutory and constitutional mandates, as well as consistently with case precedent.

### The State's Waiver Argument

On appeal, the State argues, "To the extent that Appellant's briefing may be seeking to raise something other than a *Franks* claim under the Fourth Amendment, such claim(s) should be held waived." The State also argues, "Appellant's *Franks* complaint was not preserved at trial."

In her amended motion to suppress, Appellant relies on both state and federal constitutional protections, as she does on appeal. We hold that Appellant did not waive her state constitutional claims. As to the *Franks* complaint, the State concedes that Appellant's amended motion to suppress includes a *Franks* complaint, which it describes as "one boilerplate accusation—that there was false information in the affidavit." The State argues that Appellant never identified the false information either in her motion or at the hearing. The State is incorrect. As we indicated in our prior opinions, the *Franks* issue was squarely before the trial judge. It was presented in the amended motion to suppress, and it was raised in the hearing on the motion.

The State asks us to employ a hyper-technical analysis of both the pleadings and counsels' statements in the trial court. This court is well aware that lawyers are rarely as articulate as they would prefer to be when faced with the fast-paced and

---

8. *Id.* at 233, 103 S.Ct. at 2329.

9. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

10. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331; see *Bower v. State*, 769 S.W.2d 887, 902 (Tex. Crim.App.) (holding we do not conduct a de novo review but look to the evidence as a whole and determine whether there is substantial evidence to support the magistrate's decision), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989), *overruled on other grounds*, *Heitman v. State*, 815 S.W.2d 681, 685 n. 6 (Tex.Crim.App.1991).

11. Tex. Const. art. V, § 6.

often unpredictable situations encountered in the trial court. Were we to employ the scrutiny the State demands in the case now before this court, we would be compelled to hold that the State conceded at the hearing that the search was conducted without a valid warrant. The prosecutor stated in open court,

> The State is conceding that the arrest was warrantless. In other words, that would force the State to put their witnesses on first.
>
> *We do not in any way concede that the search was not warrantless.* [Emphasis added.]

Were we to read that statement as critically as the State demands, this opinion would end here.

Because we recognize that, unlike an appellate court, the trial court affords less opportunity for prepared remarks, we read statements of counsel in a common-sense manner. Consequently, we recognize that both the trial judge and prosecutor understood Appellant's *Franks* complaint, as does this court. Opting not to call the affiant a liar, Appellant's counsel, who is a former police officer, argued to the trial court that Officer X's affidavit contained statements that were not true, not because of the officer's "negative or bad faith intentions," but because of a reckless disregard for the truth. Appellant also stated specifically to the trial court, "I want to try to show they did not observe him: they did do a search of the informant and were not able to see, and it's very well possible that the drugs came from other locations."

At the conclusion of the hearing, Appellant argued that the informant was unreliable and that the information he supplied that was used in the affidavit was unreliable. She also argued that, although Officer X had stated in his affidavit that he was able to see the informant enter Appellant's apartment, the record reflected that

Officer X was not able to see the informant.

On appeal, Appellant argues,

Contrary to his testimony, Officer [X]'s affidavit says nothing about a Crime Stoppers tip and then later finding an informant to do the buy, or that it was the officer who pointed out the "breezeway that the apartment was located in" to the informant (not the other way around as his affidavit states) but makes it appear this was all done by one "confidential informant."

As she further explains in her reply brief,

> The key issue in this case revolves around a misrepresentation made by the police officer when he swore out his warrant affidavit before the issuing magistrate. The officer/affiant contradicted his affidavit in court in his sworn testimony about the "particular place" to be searched. The issue for the Court to determine is whether this merits a reversal of Appellant's conviction.

The State's arguments regarding waiver are without merit and contrary to the record now before this court. We hold that Appellant preserved the challenged claims.

**Merits of the Appeal**

The affidavit in question states, in its entirety:

MY BELIEFS ARE BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES:

1. That your affiant, [X] # 2615, has been a Fort Worth Police Officer for over nine years and is currently assigned to the Special Operations Division, Narcotic Section.

2. That your affiant met with a reliable confidential informant concerning the illegal possession and distribution of crack cocaine from 5308 E. Rosedale

# 158. That the confidential informant provided the following information:

A. That black female approximately 38–42 years of age, 5′08″–5′10″ tall and weighing approximately 125–135 pounds, medium complexion and medium black hair[ ], residing at 5308 E. Rosedale # 158, is involved in the distribution of crack cocaine.

B. That the confidential informant has personally observed the suspect in possession of and distributing crack cocaine from within 5308 E. Rosedale # 158.

3. That your affiant met with the confidential informant at a prearranged location. The informant specifically pointed at the location described in the body of this affidavit.

That your affiant confirmed the location appeared exactly as described by the informant. Your affiant further corroborated much of the informant[']s information through surveillance and independent investigation.

4. That in the past, the informant has displayed the ability to accurately identify crack cocaine which was later seized and confirmed by laboratory analysis to be a controlled substance. That the informant has provided information that has le[ ]d to the confiscation of crack cocaine and the arrest of individuals for possession of controlled substance.

5. That on June 27th, 2001, your affiant met with a reliable and confidential informant. At this time, your affiant provided the confidential informant with twenty dollars of U.S. currency and instructed the confidential informant to go to 5308 E. Rosedale # 158 and purchase twenty dollars worth of crack cocaine [and] then return and meet with your affiant. Before leaving your affiant, the informant was searched and found to have no contraband on his person. Upon leaving your affiant, your affiant conducted a visual surveillance as the confidential informant went into the apartment complex located at 5308 E. Rosedale # 158. Once inside, the confidential informant stayed a short period of time, then returned and met with your affiant. The confidential informant then produced an off-white rocklike substance that was purported to be crack cocaine.

The confidential informant stated that the purported crack cocaine was purchased from **black female approximately 38–42 years of age, 5′08″–5′10″ tall and weighing approximately 125–135 pounds, medium complexion and medium black hair.** The informant was again searched by your affiant and again found to have no contraband on his person. The substance was subsequently field tested by your affiant, at which time the substance showed positive for crack cocaine.

6. That your affiant is aware t[hat] it is common for persons involved in narcotics to keep books, notes, ledgers, money orders, records pertaining to narcotics trafficking, files relating to the transportation, ordering, sale and distribution of narcotics, currency, financial instruments, jewelry and/or proceeds of narcotics trafficking. Also telephone and address books, papers reflecting names, addresses of possible subjects involved in the illicit sales of narcotics, property, materials used in the packing, cutting, or weighing up of narcotics and firearms.

7. That it is common for individuals involved in the possession and distri-

bution of narcotics to carry firearms, therefore to knock/announce could jeopardize the safety of officers entering the residence and/or allow the destruction of evidence.

8. That your affiant is well aware and stresses the need for the confidential informant in this investigation to remain anonymous for his/her personal safety as well as for the future success of ongoing narcotic investigations.

Therefore, I, the undersigned ask that a search warrant be issued according to the provisions of the State Law to search for and seize the controlled substance[,] namely crack cocaine, believed unlawfully possessed by **black female approximately 38–42 years of age, 5′08″–5′10″ tall and weighing approximately 125–135 pounds, medium complexion and medium black hair[,]** at **5308 E. Rosedale # 158,** in the City of Fort Worth, Tarrant County, State of Texas.

■ Appellant argues that Officer X wrote his affidavit in such a way that it gives the impression that he actually saw the confidential informant enter Apartment No. 158, when, in actuality, Officer X only saw the confidential informant enter a breezeway that led to Apartment No. 158 and three other apartments. Officer X testified that while he observed the informant enter the breezeway, he did not see the informant enter Apartment No. 158. Appellant argued at the hearing that Officer X exhibited bad faith in failing to verify that the informant entered Apartment No. 158. Relying on *Franks v. Delaware*, Appellant now contends that Officer X's reckless disregard for the truth ren-

ders the search warrant invalid under the Fourth Amendment.[12]

■ In *Franks,* the United States Supreme Court stated that if a defendant establishes by a preponderance of the evidence that a false statement was included by the affiant knowingly and intentionally, or with reckless disregard for the truth, and that without the affidavit's false statement, it is insufficient to establish probable cause, the search warrant must be voided.[13] If the statement only evidences the police's mere negligence in checking or recording the facts relevant to a probable cause determination, then it is beyond the scope of *Franks.*[14] That is, a misstatement in an affidavit that is the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, will not render invalid the warrant based on it.[15]

At the *Franks* hearing, Officer X admitted that although he had received a Crime Stoppers tip that narcotics were sold out of the apartment in question, he did nothing to corroborate the tip or to confirm its information. That is, he did not perform surveillance on the apartment, did not check the trash, and did not confirm with other sources of information the report of drug-dealing there. When asked what he did to corroborate the Crime Stoppers tip, Officer X testified that, in checking the tip, "[w]e'll try to pull up addresses or names in the county computer." When asked whether he did so in this case, his response was, "I'm sure I did."

The record reflects no other attempts to verify the information relayed in the Crime Stoppers tip until the officers set up the controlled buy. Officer X also admit-

---

12. *See Franks,* 438 U.S. at 155–56, 98 S.Ct. at 2676.

13. *Id.*

14. *Id.* at 170, 98 S.Ct. at 2683.

15. *Id.* at 171, 98 S.Ct. at 2684.

ted that one of the persons named as dealing drugs out of the apartment was a ten-year-old child. Officer X considered the tip to have no bearing on the probable cause contained in the affidavit.

Because (1) the tip came from an anonymous Crime Stoppers informant, (2) Officer X did not verify the information in the tip, and (3) he did not verify the reliability of the tip, the record clearly shows that Officer X's statements in the second, third, and fourth numbered paragraphs of the affidavit—

2. That your affiant met with a reliable confidential informant concerning the illegal possession and distribution of crack cocaine from 5308 E. Rosedale # 158. That the confidential informant provided the following information:

 A. That black female approximately 38–42 years of age, 5′08″–5′10″ tall and weighing approximately 125–135 pounds, medium complexion and medium black hair[ ], residing at 5308 E. Rosedale # 158, is involved in the distribution of crack cocaine.

 B. That the confidential informant has personally observed the suspect in possession of and distributing crack cocaine from within 5308 E. Rosedale # 158.

3. That your affiant met with the confidential informant at a prearranged location. The informant specifically pointed at the location described in the body of this affidavit.

 That your affiant confirmed the location appeared exactly as described by the informant. Your affiant further corroborated much of the informant[']s information through surveillance and independent investigation[; and]

4. That in the past, the informant has displayed the ability to accurately identify crack cocaine which was later seized and confirmed by laboratory analysis to be a controlled substance. That the informant has provided information that has le[ ]d to the confiscation of crack cocaine and the arrest of individuals for possession of controlled substance—

are either untrue or statements made with reckless disregard for the truth of the statements, according to Officer X's own testimony.

As Appellant points out, the affidavit clearly states that Officer X personally met with a confidential informant who pointed at "the location described in the body of this affidavit." This informant, according to the affidavit, provided information about drug-dealing in Apartment No. 158. But Office X did not testify that any informant pointed out the apartment to him. Rather, Officer X testified that he pointed out the apartment to the informant who made the buy. Officer X testified that before he arranged the undercover buy, the only information he possessed had come from the anonymous Crime Stoppers tip. Officer X testified that, because the initial informant was actually an anonymous Crime Stoppers tipster, the probable cause was limited to the undercover buy. The police officers set up the buy, got the informant, and directed him to the apartment. In describing his actions, in response to the prosecutor's questions, Officer X testified:

A. Well, we get a confidential informant, and what we basically do is we send him to the apartment with currency that we give [him] and get [him] to buy narcotics in the apartment.

Q. Did you, in fact, get a confidential informant in this case?

A. Yes.

Officer X also explained,

> We drove by and pointed out the breezeway that the apartment was located in, told him which apartment it was—basically what we'll do is we'll search their pockets to make sure they don't have narcotics on them or cash because we don't want them to take that into the apartment with them. We want to make sure what they bring out of the apartment they didn't go in with, if that makes sense.
>
> Pointed out the apartment, take him around down just down the block, drop him off, watch him walk back to the apartment. They go in the apartment and do what they do; they come back out of the apartment directly to us.

Officer X's testimony made it clear that the informant referred to in paragraph five of his affidavit was not the person referred to in paragraphs two, three, and four. All of the information referred to in paragraphs two and three was received before Officer X contacted the informant who made the buy and was provided by someone who knew which apartment was involved and directed Officer X to that apartment. Paragraph four refers to the informant who, according to the affidavit, provided the original information and directed Officer X to the apartment.

In his testimony, Officer X admitted that the original information which he attributed to a reliable informant in his affidavit had actually come instead from the anonymous tipster. He referred to that person in paragraph two as "a reliable informant," and subsequently, in paragraphs two, three, and four as "the confidential informant" and "the informant." According to the affidavit, the reliable confidential informant of paragraphs two, three, and four pointed out the apartment to Officer X. If Officer X was not referring to the anonymous tipster in his testimony, then he has created a second informant out of whole cloth.

Paragraph five shifts gears and refers to June 27, 2001. Officer X met with "a reliable and confidential informant." Officer X also admitted in his testimony that this second informant was not the source of the original information. Subsequent references to the second informant are to "the confidential informant." Although the affidavit states that the initial informant pointed out the apartment to Officer X, in regard to the informant in paragraph five, Officer X testified that he himself pointed out the apartment to the informant who was to make the buy:

> A [Officer X]. We had a Tarrant County Crime Stoppers complaint on that apartment.
>
> Q. Did the Fort Worth Police Department Narcotics Division receive several tips from Crime Stoppers in the past?
>
> A. Yes.
>
> Q. Has it been proven to be a credible and reliable source of information for the police department?
>
> A. Yes.
>
> . . . .
>
> Q. [On] June 29 of 2001[,] what did you do in response to that tip?
>
> A. We did what we call a cover[t] buy at the apartment.
>
> Q. Could you talk to the Court about what you mean?
>
> A. Well, we get a confidential informant, and what we basically do is we send him to the apartment with currency that we give [him] and get [him] to buy narcotics in the apartment.
>
> Q. Did you, in fact, get a confidential informant in this case?
>
> A. Yes.

Officer X got a confidential informant, pointed out the breezeway, and "told him which apartment it was."

Officer X's testimony makes clear that the informant who told the police which apartment he or she was reporting as the site of the drug-dealing was not the same informant who had to be shown where the breezeway was and told "which apartment it was."

Officer X also stated,

A. Told him what we were looking for, which was crack cocaine; sent him into the apartment with $20, and instructed him to try to buy crack cocaine from the apartment.

Officer X testified that they were in his car when he gave the informant his instructions. The car was around the corner rather than in the parking lot of the apartment. Although Officer X was able to watch the informant until he got to the breezeway, he was not able to watch him after he had entered the breezeway. This testimony directly contradicts the portion of the fifth-numbered paragraph in the affidavit in which Officer X stated that he watched the informant enter Apartment No. 158: "Upon leaving your affiant, your affiant conducted a visual surveillance as the confidential informant went into the apartment complex located at 5308 E. Rosedale #158. *Once inside,* the confidential informant stayed a short period of time, then returned and met with your affiant." [Emphasis added.]

Officer X also admitted that when the police returned to the apartment with the warrant to make the arrests, a man was just outside Apartment No. 158. The man dropped some drugs on the ground when he saw the officers approach. Inside the breezeway are two apartments downstairs and a stairway leading to two apartments upstairs. A person who went into the breezeway, then, would have access to four apartments as well as to the common areas both upstairs and downstairs.

■ The misstatements in the affidavit supporting the warrant are significant. As statements that are either untrue or made with reckless disregard for the truth, paragraphs two, three, and four of the affidavit, and the portion of paragraph five quoted above, must be disregarded in considering the sufficiency of the affidavit to establish probable cause to justify the warrant.[16] The only evidence that remains in the affidavit from which to determine probable cause to search Apartment No. 158 and seize evidence therefrom are the first-numbered paragraph (providing that Officer X, #2615, has been a Fort Worth Police Officer for over nine years and is currently assigned to the Special Operations Division, Narcotic Section) and a portion of the fifth-numbered paragraph (stating that the officers provided a confidential informant with money, searched him before he left and when he returned, and that he had a substance purporting to be crack cocaine when he returned that he claimed he purchased from a black female approximately 38–42 years of age, 5'08"–5'10" tall and weighing approximately 125–135 pounds, medium complexion and medium black hair). That evidence is not enough.

■ It is a well-established tenet of constitutional law that the information from the unnamed informant alone will not establish probable cause.[17] This tenet applies equally to the unnamed tipster.[18] As our sister court in Austin has noted,

---

16. *See Gates,* 462 U.S. at 236, 103 S.Ct. at 2331; *Bower,* 769 S.W.2d at 902.

17. *Janecka v. State,* 739 S.W.2d 813, 825 (Tex. Crim.App.1987).

18. *See Parish v. State,* 939 S.W.2d 201, 203

In evaluating whether anonymously provided information suffices to support a finding of probable cause, the informant's veracity, reliability, and basis of information are still "highly relevant" factors. Accordingly, an anonymous telephone call alone rarely will merit the requisite level of suspicion to justify even an investigative detention. The anonymously provided information must contain some indicia of reliability or be "reasonably corroborated" by police before it can be used to justify a search. Moreover, mere corroboration of details that are easily obtainable at the time the information is provided will not support a finding of probable cause. In addition, wholly conclusory statements in the affidavit will not suffice.[19]

Neither Officer X nor this court considers the uncorroborated Crime Stoppers tip sufficient to support the warrant in question. As Officer X admitted, the only confidential informant other than the person who made the buy was the anonymous Crime Stoppers tipster.

Examining the remainder of paragraph five, it is glaringly deficient of any justification for relying on any representations made by the confidential informant. There is nothing to explain why he should be considered reliable and trustworthy. Except for the informant's report to Officer X, the affidavit provides no reason to believe the informant got the rock of crack cocaine from an occupant of Apartment No. 158 rather than from an occupant of one of the other three apartments in the

breezeway or from someone standing out in the breezeway area.

■ The State argues that the controlled buy alone "provides plenty of bases to corroborate the informant's statement." We disagree, especially in light of the fact that Officer X admitted that he did not actually see the informant enter the apartment in question. Officer X also admitted that he searched only the informant's pockets and that he could have had drugs concealed elsewhere on his body. Controlled buys that have constituted sufficient corroboration of an informant's statement have been those in which officers either have seen the transaction itself or have, at the very least, seen the informant enter the door of the specific house or apartment and come out with the drugs.[20] Our sister court in Corpus Christi held an affidavit insufficient because it contained no information regarding the reliability of the informant and indicated no personal observations of the affiant regarding the transaction between the defendant and the affiant's agent.[21] In *Adkins*, the El Paso court held an affidavit insufficient because it did not indicate whether the source of the tip was direct observation or reliable hearsay, it did not indicate a basis for the informant's reliability such as past performance, and it did not explain the nexus between the original tip and the officer's corroborative details.[22] In reversing the decision of the El Paso court, the Texas Court of Criminal Appeals nevertheless approved the lower court's reasoning on

(Tex.App.-Austin 1997, no pet.) (citations omitted).

**19.** *Id.*

**20.** *See, e.g., Richardson v. State*, 622 S.W.2d 852, 856 (Tex.Crim.App.1981); *State v. Ozuna*, 88 S.W.3d 307, 312–13 (Tex.App.-San Antonio 2002, pet. ref'd).

**21.** *Dees v. State*, 722 S.W.2d 209, 214–15 (Tex.App.-Corpus Christi 1986, pet. ref'd).

**22.** *Adkins v. State*, 675 S.W.2d 604, 607 (Tex. App.-El Paso 1984), *rev'd on other grounds*, 717 S.W.2d 363 (Tex.Crim.App.1986).

this issue.[23]

Considering the affidavit exclusive of the statements that were untrue or made with reckless disregard for the truth of the statements, it contains a statement of Officer X's credentials and an uncorroborated representation by an informant whom Officer X may or may not have known before that the informant went to the apartment in question and bought crack cocaine with money that Officer X provided him. We hold that the surviving portion of the affidavit is inadequate to support a neutral magistrate's probable cause determination that would justify the warrant. Consequently, we hold that the trial court abused its discretion in denying Appellant's motion to suppress. We sustain Appellant's first point. In light of our disposition of Appellant's first point, we do not reach her remaining points.[24]

### CONCLUSION

Having held that the search warrant was invalid and that there was no probable cause for the search and seizure, we reverse the trial court's judgment and remand this case for trial without the illegally seized evidence.

HOLMAN, J. dissents without opinion.

---

**23.** *Adkins,* 717 S.W.2d at 364.

**24.** *See* Tex.R.App. P. 47.1.