NUMBER 13-06-129-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


LORI ANN ATHEY, Appellant,

 

v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 36th District Court of Aransas County, Texas

 
 

MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Benavides and Vela


Memorandum Opinion by Justice Benavides
 

 Appellant, Lori Athey ("Lori"), was charged with possession of methamphetamine
(one to four grams) with intent to deliver, a second degree felony. TEX. HEALTH & SAFETY
CODE ANN. §§ 481.102(6); 481.112(b) (Vernon 2001 & Supp. 2006). At a bench trial, she
was tried and convicted of the lesser included offense of possession of methamphetamine
(one to four grams), a third degree felony. Id. § 481.115(c) (Vernon 2003). Lori was
sentenced to four years' imprisonment in the Texas Department of Corrections, Institutional
Division, probated for four years, and a $1,500.00 fine. 

 On appeal, Lori raises four issues: (1) the trial court erred by denying her request to
suppress evidence, (2) the evidence was factually and legally insufficient to support her
conviction, (3) the trial court erred by denying her request to sever her case from her co-defendant's case, and (4) she received ineffective assistance of counsel. We affirm. 

I. Background 

 On April 29, 2006, a search warrant was executed at 131 Kelly Lane in Aransas
County. The search warrant indicates that Patrick Shane Athey ("Patrick"), Lori's husband,
was the suspected party in control of the property to be searched. The search warrant was
issued by a magistrate after a finding of probable cause, which was supported by an
affidavit from Rusty Young, a narcotics investigator for Tri-County Narcotics Task Force. According to the probable cause affidavit, Young is an experienced narcotics officer. 
The affidavit states that he has been a peace officer since 1993 and a narcotics
investigation officer for the past six years. It states that Young has "participated and
assisted in joint investigations with law enforcement agents of the Texas Department of
Public Safety Narcotics Service and other law enforcement agencies in their investigations
of individuals who traffic in illegal controlled substances."

 Within the twenty-four hours prior to his signing of the affidavit, Young received
information from a confidential informant regarding Patrick's possession of
methamphetamine. The informant asserted that he had observed Patrick in possession of
a quantity of methamphetamine at the "suspected place," which the affidavit described as
follows:

 The suspected place is located at 131 Kelly Lane in Aransas County, Texas. 
The suspected place is a single story wood frame residential dwelling brown
in color with a metal roof. The suspected place displays the address "131" on
the front of the residence to the left of the front door as seen from Kelly. The
suspected place has a chain link fence around the front of the residence and
an air conditioning unit in a window to the left of the front door as seen from
Kelly. The suspected place has a metal building in the rear of the residence. 
The suspected place has a driveway to the right of the residence as seen
from Kelly. There is a child swing set in the front yard near the fence. This
warrant includes all other buildings, structures, and vehicles on said premises
belonging to or under the control of the suspected party and other individuals
found at the suspected place who are in control of the suspected place and/or
engaged in the illegal activities set out herein. (emphasis added).


Although Young had not received information from this particular informant in the past, the
affidavit stated that Young had previously worked with confidential informants, was familiar
with undercover surveillance techniques, and was familiar with the utilization of innovative
investigative techniques. 

 The affidavit states that Young took the informant to the "suspected place" to make
a controlled buy. Young searched the informant and the informant's car before giving the
informant money. Young then observed the informant exit his vehicle and "go directly into
the suspected place." The informant returned a short time later with a quantity of
methamphetamine. Young's affidavit states that the only place that the informant could
have obtained the methamphetamine was from inside the suspected place. 

 Finally, Young's affidavit sets out how he attempted to verify the informant's
reliability. He states that he attempted to identify a possible motive or reason to falsify
information against the suspects in possession of illegal substances, but he found none. Young presented the affidavit to a magistrate, who found probable cause and issued
a search warrant. The police then conducted a search of the Atheys' home. Patrick was
not found on the premises at that time, but Lori was present. The police discovered
methamphetamine in the garage, which according to the record was a large metal building
with an interior room. The police conducted an on-site video interrogation of Lori. 

 Lori and Patrick were charged with possession of methamphetamine (one to four
grams) with intent to deliver, a second degree felony. TEX. HEALTH & SAFETY CODE ANN. §
481.112(b). Before trial, Lori's counsel filed a motion to suppress all evidence obtained as
a result of the purportedly illegal search. The motion stated that the probable cause
affidavit contained misrepresentations of fact: "The search and seizure were made in
reliance on a search warrant. The affidavit in support of the warrant contains intentional or
negligent misrepresentations of fact which would tend to mislead the issuing magistrate. 
But for these misrepresentations, there is no probable cause to issue a warrant." The trial
court held a hearing on the motion to suppress on December 1, 2006. 

 Young testified at the suppression hearing. Lori's counsel questioned Young about
what he considered the "suspected place" when he signed the probable cause affidavit. 
Lori's counsel pointed out that the affidavit says that the "suspected place" has a metal
building to the rear-not that the metal building to the rear is the suspected place. Young,
however, asserted that the affidavit was truly referring to the entirety of the property as the
suspected place, including the metal building. Young testified that he saw the informant go
into the back building of the residence.

 During cross-examination, Young testified that he ran a criminal history search on
his informant and that the search did not show any indictment or warrant. Lori's counsel
asked Young to identify his informant, claiming that the informant had a criminal history. 
The trial court, however, sustained the State's objection to this question. Lori's attorney
stated that if Young had been able to answer the question, he would have stated the
informant's name and that name would match criminal history records introduced later by
Lori's counsel. Although Lori's counsel offered the criminal records into evidence, Young
never confirmed the informant's name.

 Russell Kirk also testified at the hearing. He was the assistant commander of the Tri-County Narcotics division, who executed the search warrant. He testified that upon
executing the warrant, he encountered Lori at the residence. He stated that he advised 
Lori of her Miranda warnings. Then he described the video tape of the interview, and he
stated that the video was a true and correct copy of the interview, made by reliable
equipment. The video was played for the court. 

 According to the video, the interviewing officer read Lori her Miranda warnings, and
she waived her right to counsel. Lori indicated that she lived at the residence with her
husband, Patrick. She told the police that there might be narcotics out in the garage, but
she did not know. In response to the question why she believed drugs were in the garage,
she said, "if there was any drugs anywhere, that's where'd they be." 

 Lori indicated that both she and her husband used methamphetamine. Lori further
indicated that she had used methamphetamine within the past two days and that she used
the drug "every once in a while." Lori stated, however, that she did not use the
methamphetamine in the house. In response to the final question of whether or not she had
knowledge that her husband had methamphetamine in the garage, she said, "I suspected
he might." After hearing the testimony and watching the video, the trial court denied the
motion to suppress. 

 Lori and Patrick were set for a non-jury trial as co-defendants with the same trial
counsel. Before trial, Lori's counsel moved to sever her case from Patrick's case, asserting
that she would be prejudiced because there would be certain evidence admissible against
Patrick that was inadmissible against her. The trial court denied the motion. Trial counsel
received assurances from the judge that he would consider evidence against each co-defendant separately. Trial counsel further noted to the judge that he would make proper
objections as to the inadmissibility of evidence as to one co-defendant or the other. 

 A non-jury trial commenced on January 5, 2006. The State offered seventeen
exhibits, fourteen of which were photographs of the property, the narcotics, and a phone bill
indicating that Patrick lived at the residence. One photograph showed methamphetamine
on a workbench in the garage. Exhibit fifteen was the video interrogation of Lori. Exhibit
sixteen was a plastic bag containing the contraband, and exhibit seventeen was a lab report
indicating that the contraband found at the scene was indeed methamphetamine. 

 Three police officers testified on behalf of the State. All indicated that the narcotics
in question were found in the garage, not in the residence where Lori was found. Neither
Lori nor Patrick testified. Defense counsel rested without calling any witnesses. On the
same date, January 5, 2006, the trial judge found Lori guilty of the lesser included offense
of possession of methamphetamine (one to four grams), a third degree felony. TEX. HEALTH
& SAFETY CODE ANN. § 481.115(c). The trial judge certified Lori's right to appeal on
February 16, 2006. She filed a timely notice of appeal on March 15, 2006. Tex. R. App.
P. 26.2(a)(1). (1) 

II. Suppression of Evidence

 By Lori's second issue, she contends the trial court erred in failing to grant her motion
to suppress evidence obtained as a result of a search warrant issued purportedly in violation
of the requirements of the Texas Code of Criminal Procedure. See Tex. Code Crim. Proc.
Ann. art. 18.01 (Vernon 2007). Specifically, she alleges that the affidavit underlying the
search warrant did not set forth sufficient facts to establish probable cause and that Young
intentionally, knowingly, or recklessly misrepresented facts in the affidavit. See id. art.
18.01(b), (c); Franks v. Delaware, 438 U.S. 154, 155-56, 171-72 (1978). Accordingly, any
evidence obtained based on the warrant should have been excluded. We disagree.

 A. Standard of Review and Applicable Law

 Generally, the appropriate standard for reviewing a trial court's ruling on a motion to
suppress is a bifurcated standard of review, giving almost total deference to the trial court's
determination of historical facts and reviewing de novo the court's application of the law. 
Amador v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing Ford v. State, 158
S.W.3d 488, 493 (Tex. Crim. App. 2005)); Odom v. State, 200 S.W.3d 333, 335 (Tex.
App.-Corpus Christi 2006, no pet.). However, as the Texas Court of Criminal Appeals
recently reaffirmed, our jurisprudence recognizes a "constitutional preference for the warrant
process in which police officers present their facts to a neutral magistrate to decide if there
is probable cause to issue that warrant." Rodriguez v. State, No. PD-1013-06, 2007 Tex.
Crim. App. LEXIS 624, at *5 (Tex. Crim. App. May 9, 2007); Swearingen v. State, 143
S.W.3d 808, 811 (Tex. Crim. App. 2004). Rather than applying a de novo review of a
magistrate's probable cause finding, which is a question of law, we must pay great
deference to a magistrate's finding of probable cause "to encourage police officers to use
the warrant process rather than making a warrantless search and later attempting to justify
their actions by invoking some exception to the warrant requirement." Rodriguez, 2007 Tex.
Crim. App. LEXIS 624, at *7. 

 Accordingly, to determine the legal adequacy of a probable cause affidavit, we look
within the affidavit's four corners. Id. at *12 & n.25; Jones v. State, 833 S.W.2d 118, 123
(Tex. Crim. App. 1992); Oubre v. State, 542 S.W.2d 875, 877 (Tex. Crim. App. 1976). A
reviewing court's inquiry, therefore, is the same as the magistrate's: does the affidavit
contain "sufficient facts, coupled with inferences from those facts, to establish a 'fair
probability' that evidence of a particular crime will likely be found at a given location?"
Rodriguez, 2007 Tex. Crim. App. LEXIS 624, at *15. 

 Despite the "four corners" rule, a defendant may go behind the affidavit and attack
the veracity of the officer's affidavit in support of a search warrant if certain procedures are
followed. Franks, 438 U.S. at 155-56, 171-72. In Franks v. Delaware, the United States
Supreme Court held that if a defendant establishes by a preponderance of the evidence
that the officer knowingly, intentionally, or recklessly misrepresented the facts in the
affidavit, and that without the false statement there was insufficient information to support
a finding of probable cause, the resulting search warrant must be deemed invalid. Id. 
However, given the presumption of validity, to be entitled to a hearing questioning the
officer's veracity, the defendant must make a "substantial preliminary showing" of the
elements set out in Franks. Id. 

 The Texas Court of Criminal Appeals has made clear that in order to be granted a
Franks hearing, a defendant must:

 1. Allege deliberate falsehood or reckless disregard for the truth by the
affiant, specifically pointing out the portion of the affidavit claimed to be
false. Allegations of negligence or mistake are insufficient, and the
allegations must be more than conclusory;

 

 2. Accompany these allegations with an offer of proof stating the
supporting reasons. Affidavits or otherwise reliable statements of
witnesses should be furnished. If not, the absence of written support
of the allegations must be satisfactorily explained.

 

 3. Show that when the portion alleged to be false is excised from the
affidavit, the remaining content is insufficient to support issuance of the
warrant. 


Ramsey v. State, 579 S.W.2d 920, 922-23 (Tex. Crim. App. 1979); see also Harris v. State,
No. PD-1453-05, 2007 Tex. Crim. App. LEXIS 809, at *5 (Tex. Crim. App. June 20, 2007);
Cates v. State, 120 S.W.3d 352, 356 (Tex. Crim. App. 2003). Thus, specific allegations
and evidence must be apparent in the pleadings in order for a trial court to even entertain
a Franks proceeding. Harris, 2007 Tex. Crim. App. LEXIS 809, at *5. "[T]he challenger's
attacks must be more than conclusory and must be supported by more than a mere desire
to cross-examine." Franks, 438 U.S. at 171. 

 B. Analysis

 Lori alleges that the information stated in the affidavit was insufficient to support a
finding of probable cause and that Young misrepresented facts in his warrant affidavit. We
address these arguments in turn.

 1. Sufficiency within the four corners

 A magistrate issuing a search warrant must make a practical, common sense
decision whether, under the circumstances set forth in the supporting affidavit, there is a
fair probability that contraband or evidence of a crime will be found in a particular place. 
 Rodriguez, 2007 Tex. Crim. App. LEXIS 624, at *8-15; Trevino v. State, 875 S.W.2d 373,
375 (Tex. App.-Corpus Christi 1994, no pet.) (citing Illinois v. Gates, 462 U.S. 213, 238
(1983)); see also Davis v. State, 27 S.W.3d 664, 667 (Tex. App.-Waco 2000, pet. ref'd). 
Whether a "fair probability" exists under the totality of the circumstances is a "flexible and
nondemanding" standard. Rodriguez, 2007 Tex. Crim. App. LEXIS 624, at *9. The
magistrate can make reasonable inferences from the facts presented. Id. at *12-13;
Trevino, 875 S.W.2d at 376; Zule v. State, 802 S.W.2d 28, 32 (Tex. App.-Corpus Christi
1990, no pet.). A hypertechnical analysis of the affidavit should be avoided. Rodriguez,
2007 Tex. Crim. App. LEXIS 624, at *7. 

 Probable cause may be founded upon hearsay and upon information received from
informants, as well as upon information within the affiant's own knowledge. Janecka v.
State, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996) (citing Gates, 438 U.S. at 156));
Ashcraft v. State, 934 S.W.2d 727, 733 (Tex. App.-Corpus Christi 1996, pet. ref'd). When
an officer's probable cause affidavit relies on an informant, the informant's reliability and
the basis of his or her knowledge is relevant to the probable cause determination. Gates,
462 U.S. at 230; Ashcraft, 934 S.W.2d at 733. Corroboration of the informant's information
through independent investigation is also relevant. Gates, 462 U.S. at 241-42. 
Additionally, the affidavit should set out the officer's belief in the informant's credibility and
veracity. Id. But "a deficiency in one may be compensated . . . by a strong showing as
to the other, or by some indicia of reliability," all of which are relevant. Id. at 233; Ashcraft,
934 S.W.2d at 733 ("[T]he police may corroborate informant hearsay by their own
surveillance.").

 We recognize that the confidential informant's initial report that he had observed
Patrick in possession of methamphetamine is, by itself, not enough to support the warrant. 
Harris v. State, 184 S.W.3d 801, 812 (Tex. App.-Fort Worth 2006), rev'd on other grounds,
2007 Tex. Crim. App. LEXIS 809 (Tex. Crim. App. June 20, 2007). Young's affidavit clearly
states that the informant had never provided information to him in the past. See Ashcraft,
934 S.W.2d at 733. Accordingly, some corroboration was required. 

 Courts have found "controlled buys" and police verification of the events taking place
before and after the "controlled buy" to be sufficient corroboration of an informant's report
to support a probable cause affidavit, so long as the officers have either witnessed the
transaction itself or have seen the informant "enter the door of the specific house or
apartment and come out with the drugs." See Harris, 184 S.W.3d at 813 (citing
Richardson v. State, 622 S.W.2d 852, 856 (Tex. Crim. App. 1981)). In Richardson, for
example, the officer testified that he was an eyewitness to the events immediately
preceding and directly after the informant's drug purchase at the defendant's home. 
Richardson, 622 S.W.2d at 856. The court of criminal appeals found that testimony
sufficient to establish probable cause. Id.

 The affidavit, executed by Young, an experienced narcotics investigator, stated that
the confidential informant told Young that he had seen methamphetamine at the residence
in question within the last twenty-four hours. Attempting to corroborate this information,
Young arranged a controlled buy. Young searched the informant and his vehicle before
the informant entered the residence to make the purchase. Young stated that he
witnessed the informant enter the suspected place, and after the informant was inside for
a short time, he witnessed the informant returned with a quantity of methamphetamine. 
Under Richardson, we believe this was sufficient information within the four corners of the
affidavit to corroborate the informant's report and support a finding of probable cause. Id. 

 Lori refers this Court to our decision in Dees v. State, 722 S.W.2d 209, 214-15 (Tex.
App.-Corpus Christi 1986, pet. ref'd), where we held that an affidavit in support of a search
warrant was insufficient because the affidavit contained no information about the reliability
of the informant nor did it contain any facts concerning the drug purchase in question. The
facts of Dees are distinguishable from the instant case. In Dees, the basis in the affidavit
for probable cause consisted of a single sentence, which lacked facts but contained
numerous conclusory statements. Id. at 215. The affidavit in support of the search warrant
in the instant case has numerous corroborated facts about the contraband in question, and
the reliability of the informant was bolstered by the "controlled buy." See id. Accordingly,
Dees does not control our disposition, and we find that the affidavit was sufficient within
its four corners.

 2. Franks violations

 Second, Lori contends that the affidavit contained intentional or reckless
misrepresentations because (1) Young's affidavit stated that he attempted to verify the
informant's credibility, when in fact, the informant had been indicted just days before the
search; and (2) Young's affidavit misrepresented that he had seen the informant enter the
residence, when in fact, Young admitted at the hearing that he saw the informant enter the
garage. These issues, however, were not preserved for our review because Lori failed to
follow the requirements set out in Franks. Harris, 2007 Tex. Crim. App. LEXIS 809, at *5-7.

 Here, the only arguable reference to a Franks hearing in the original motion to
suppress is as follows: "The search and seizure were made in reliance on a search
warrant. The affidavit in support of the warrant contains intentional or negligent
misrepresentations of fact which would tend to mislead the issuing magistrate. But for
these misrepresentations, there is no probable cause to issue a warrant." Lori's motion to
suppress failed to direct the trial court to the portions of the affidavit she alleged constituted
misrepresentations. Additionally, she failed to provide an offer of proof to contradict any
such alleged falsehoods. 

 In Harris, under nearly identical facts, the Texas Court of Criminal Appeals held that
the defendant had waived his right to attack the veracity of the warrant affidavit, and
nothing was presented for review. Id. We likewise find that Lori failed to establish her
entitlement to a Franks hearing.

 Nevertheless, no evidence was presented at the motion to suppress hearing to
establish a violation under Franks. Lori cites to Harris, arguing that Young misrepresented
the fact that he saw the informant enter the garage, where the contraband was later
discovered. Harris, 184 S.W.3d at 808. In Harris, the officer's affidavit stated that he saw
the informant enter a specific apartment, which was the subject of a later search warrant. 
Id. At the hearing on the motion to suppress, however, the officer testified that a
breezeway connected four separate apartments, including the suspected apartment. Id.
at 812. The officer testified that he was only able to see the informant until he entered the
breezeway-he could not confirm that the informant in fact entered the specific, suspected
apartment. Id. The court of appeals found that this statement directly contradicted his
affidavit. Id. Finding this to be a significant misstatement, the court of appeals refused to
consider the controlled buy as support for the warrant. Id. (2)

 In this case, however, Young's affidavit and his testimony at the suppression
hearing are not inconsistent. The affidavit describes the subject property as including all
the buildings surrounding the house, which would include the garage. Young testified at
the hearing that he saw the informant enter the back building of the residence and that in
his affidavit, he intended the "suspected place" to include all the buildings associated with
the residence. Lori's comparison of the affidavit with Young's testimony is hypertechnical,
and we will not second guess the magistrate's decision based on such a technical reading. 
See Rodriguez, 2007 Tex. Crim. App. LEXIS 809, at *7. Accordingly, we find that the
controlled buy in this case was sufficient to support the magistrate's finding of probable
cause.

 Additionally, Lori contends that Young's affidavit misrepresented that he had verified
the informant's reliability. Lori contends that the informant was under indictment, and at
the hearing, she submitted criminal history records relating to the person she alleges was
the informant. However, Lori never established the informant's identity at the hearing-the
trial court refused to require Young to reveal the informant because Lori did not file a
motion to reveal the informant's identity. See Bodin v. State, 807 S.W.2d 313, 318 (Tex.
Crim. App. 1991). Accordingly, Lori presented no evidence that Young should have
discovered the criminal history of his informant. 

 Moreover, Young testified at the hearing that he ran a criminal background check
to determine any current indictments or warrants out on the informant, and he found none. 
If a statement only evidences the police's mere negligence in checking or recording facts
relevant to a probable cause determination, then it is beyond the scope of Franks. Long
v. State, 137 S.W.3d 726, 729 (Tex. App.-Waco 2004, pet. ref'd) (quoting Franks, 438
U.S. at 170). There is nothing to suggest that Young intentionally or recklessly disregarded
the alleged informant's criminal background. We conclude that the magistrate had a
substantial basis for concluding that a search warrant would uncover evidence of
wrongdoing. Lori's second issue is overruled. 

III. Legal and Factual Sufficiency

 By Lori's first issue, she contends the evidence was legally and factually insufficient
to sustain a conviction for possession of methamphetamine. Specifically, Lori asserts that
the state failed to provide sufficient evidence to prove two elements of the crime:
possession, as defined by law, and knowledge. We disagree.

 A. Standard of Review

 In a legal sufficiency review, we consider all of the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005);
Clayton v. State, 169 S.W.3d 254, 257 (Tex. App.-Corpus Christi 2005, pet. granted). The
standard of review is applicable in both direct and circumstantial evidence cases. Burden
v. State, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001); Chambers v. State, 711 S.W.2d 240,
244 (Tex. Crim. App. 1986). We are not fact finders, but a due process safeguard,
ensuring only the rationality of the trier of fact's finding of the essential elements of the
offense beyond a reasonable doubt. See Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988). 

 In a factual sufficiency review, we view the evidence in a neutral light and will set
aside a verdict only if (1) the evidence supporting the verdict is so weak that the verdict is
clearly wrong and manifestly unjust, or (2) if the verdict is against the great weight and
preponderance of the evidence. Berry v. State, AP-74,913, 2007 Tex. Crim. App. LEXIS
651, at *10 (Tex. Crim. App. May 23, 2007) (citing Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2003)). "[E]vidence, though legally sufficient, is factually insufficient if it is so
weak that the jury's verdict seems clearly wrong and manifestly unjust, or [if] considering
conflicting evidence, the jury's verdict, though legally sufficient, is nevertheless against the
great weight and preponderance of the evidence." Id. at *11 (citing Watson v. State, 204
S.W.3d 404 (Tex. Crim. App. 2006)). "A clearly wrong or unjust verdict occurs when the
jury's verdict is manifestly unjust, shocks the conscience, or clearly demonstrates bias." 
Id. 

 B. Applicable law

 Possession is defined as "actual care, custody, control or management." Tex.
Penal Code Ann. § 1.07(a)(39) (Vernon 2003). In possession of controlled substance
cases, the State must show that the accused (1) exercised actual care, control, or custody
of the substance, (2) was conscious of her connection with it, and (3) possessed the
substance knowingly or intentionally. Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995); Stroman v. State, 69 S.W.3d 325, 328 (Tex. App.-Texarkana 2002, pet. ref'd);
Jones v. State, 963 S.W.2d 826, 830 (Tex. App.-Texarkana 1998, pet. ref'd). 

 Because Lori was not in exclusive possession of the place where the contraband
was found, it cannot be concluded that she had knowledge or control over the contraband
unless there are additional independent facts and circumstances affirmatively linking her
to the contraband. Gregory v. State, 159 S.W.3d 254, 259 (Tex. App.-Beaumont 2005,
pet. ref'd); see also Brown, 911 S.W.2d at 748. Evidence affirmatively linking the accused
to the contraband will suffice for proof that she possessed it knowingly. Gregory, 159
S.W.3d at 259; see also Wootton v. State, 132 S.W.3d 80, 86-87 (Tex. App.-Houston
[14th Dist.] 2004, pet. ref'd). 

 We must keep in mind that the "affirmative link rule" is designed to "protect the
innocent bystander from conviction based solely upon her fortuitous proximity to someone
else's drugs." Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005) (citing
United States v. Phillips, 496 F.2d 1395, 1397 (5th Cir. 1974)). It is common sense that
a person--such as a family member, roommate, or friend--may jointly possess property
without necessarily possessing the contraband found in the house. Id. (3)

 No one besides the Atheys lived in the house. The photographic evidence
introduced by the State indicated that the methamphetamine was within the garage on the
premises where the Atheys lived with their children. The evidence at trial demonstrated
that drug paraphrenalia, such as a pipe and lighters, were in plain view on a desk in the
garage. The photos admitted at trial further demonstrate that the methamphetamine were
within plain view in the garage-a plastic bag containing methamphetamine was visible on
a shelf in the garage. Additionally, the various incriminating statements made by Lori
include the fact that (1) she had used methamphetamine within the past two days, and (2)
she had used methamphetamine on occasion in the past. Moreover, Lori indicated to the
police both that she suspected methamphetamine was on the premises and knew where
it was most likely to be located. 

 Examining the evidence in the light most favorable to the verdict, we conclude that
a rational trier of fact could have found beyond a reasonable doubt that Lori knowingly
possessed a controlled substance. Accordingly, we hold that the evidence is legally
sufficient to support the verdict. See Jackson, 443 U.S. at 319; see also Vodochodsky,
158 S.W.3d at 509. Additionally, our review of the record as a whole, with consideration
given to all of the evidence does not reveal any evidence that would cause us to conclude
that the proof of guilt is so obviously weak or is otherwise so greatly outweighed by
contrary proof as to render Lori's conviction clearly wrong or manifestly unjust. Therefore,
we hold that the evidence is factually sufficient to support the jury's verdict. We overrule
Lori's first issue.

IV. Severance 

 By Lori's third issue, she asserts that the trial court committed reversible error when
it denied Lori's motion to sever her from the co-defendant at trial. The code of criminal
procedure provides for when a trial court must sever co-defendants' trials:

 Two or more defendants who are jointly or separately indicted or complained
against for the same offense or any offense growing out of the same
transaction may be, in the discretion of the court, tried jointly or separately
as to one or more defendants; provided that in any event either defendant
may testify for the other or on behalf of the state; and provided further, that
in cases in which, upon timely motion to sever, and evidence introduced
thereon, it is made known to the court that there is a previous admissible
conviction against one defendant or that a joint trial would be prejudicial to
any defendant, the court shall order a severance as to the defendant whose
joint trial would prejudice the other defendant or defendants. 


Tex. Code Crim. Proc. Ann. art. 36.09 (Vernon 2007). "Absent evidence of prejudice to
one defendant in a joint trial, or evidence that one of the defendants has a prior admissible
conviction, a motion for severance is left to the to the trial court's discretion." King v. State,
17 S.W.3d 7, 16-17 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd); Patterson v. State,
783 S.W.2d 268, 270 (Tex. App.-Houston [14th Dist.] 1989, pet. ref'd). Severance is not
a matter of right but rests within the sound discretion of the trial court. Peterson v. State,
961 S.W.2d 308, 310 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd). 

 When an accused is not entitled to a severance, the denial of a severance motion
by the trial court constitutes an abuse of discretion only when the movant satisfies the
heavy burden of showing clear prejudice. Adams v. State, 180 S.W.3d 386, 400 (Tex.
App.-Corpus Christi 2005, no pet.). "The mere allegation that prejudice will result is not
evidence of, or a sufficient showing of, prejudice under article 36.09, particularly when the
severance is discretionary with the trial judge." Id. If the motion to sever is not supported
by evidence, the trial court's denial of the motion is not an abuse of discretion. Id. 

 In her motion to sever, Lori states, without support, that a joint trial will prejudice her. 
She also asserts, again without support, that there will be evidence that will be admissible
against her co-defendant and not against her. Lori has not met the burden of showing
clear prejudice. The trial court did not abuse its discretion in overruling Lori's motion for
severance. Lori's third issue is overruled. 

V. Ineffective Assistance of Counsel 

 In her final issue, Lori argues that she was denied effective assistance of counsel
because her trial counsel had an actual conflict of interest between the retained client,
Lori's co-defendant husband, and trial counsel's pro bono client, Lori herself. Specifically,
Lori complains that her trial counsel "argued for and was granted the severance, but then
asks the trial court to proceed to try the defendants together but separate, presuming the
trial court could proceed to try the two defendants together but separately consider the
evidence without causing unfair prejudice to appellant." Additionally, Lori argues that her
attorney failed point out what evidence could be considered with regard to each co-defendant. Finally, as a catchall, she points to her first three issues as evidence of
ineffective assistance of counsel.

 We apply the two-pronged Strickland analysis to determine whether counsel's
representation was so deficient that it violated a defendant's constitutional right to effective
assistance of counsel. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); 
Jaynes v. State, 216 S.W.3d 839, 851 (Tex. App.-Corpus Christi 2006, no pet.); see
Strickland v. Washington, 466 U.S. 668, 684 (1984). An appellant claiming a Strickland
violation must establish that (1) "his attorney's representation fell below an objective
standard of reasonableness, and (2) there is a reasonable probability that, but for his
attorney's errors, the result of the proceeding would have been different." Jaynes, 216
S.W.3d at 851; see Strickland, 466 U.S. at 687. 

 We afford great deference to trial counsel's ability--"an appellant must overcome
the strong presumption that counsel's conduct fell within the wide range of reasonable
professional assistance." Jaynes, 216 S.W.3d at 851. The appellant must prove both
elements of the Strickland test by a preponderance of the evidence. Munoz v. State, 24
S.W.3d 427, 434 (Tex. App.-Corpus Christi 2000, no pet.). 

 The record must affirmatively show the allegedly deficient acts or omissions. 
Jaynes, 216 S.W.3d at 851. The Texas Court of Criminal Appeals has held that in most
direct appeals, a silent record that provides no explanation for counsel's conduct will be
insufficient to overcome the presumption of reasonableness. Goodspeed, 187 S.W.3d at
392. It is "critical that the defendant obtain the necessary record in the trial court to rebut
the Strickland presumption that counsel's conduct was strategic." Batiste v. State, 217
S.W.3d 74, 83 (Tex. App.-Houston [1st Dist.] Oct. 12, 2006, no pet.); Green v. State, 191
S.W.3d 888, 894-95 (Tex. App.-Houston [14th Dist.] 2006, pet. ref'd).

 An appropriate record, which should include counsel's reasons for his actions, is
usually prepared at a hearing on a motion for new trial or developed by a writ of habeas
corpus. Batiste, 217 S.W.3d at 83. "'[T]rial counsel should ordinarily be afforded an
opportunity to explain his actions before being denounced as ineffective.'" Goodspeed,
187 S.W.3d at 392 (quoting Rylander v. State, 101 S.W.3d 107, 111 (Tex. Crim. App.
2003)). Absent an opportunity for the attorney to explain his actions, an appellate court
should not "find deficient performance unless the challenged conduct was 'so outrageous
that no competent attorney would have engaged in it.'" Goodspeed, 187 S.W.3d at 392
(quoting Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

 First, Lori's contention that her counsel was granted a severance, but then waived
the right to a separate trial, is not supported by the record. Nowhere does the record
indicate that the trial court ever granted a severance. Thus, we reject her first that her
counsel waived a severance previously granted by the trial court. 

 Second, Lori did not file a motion for new trial, and there is no affidavit from
appellant's trial counsel explaining his actions. Lori does not refer us to any evidence in
the record demonstrating counsel's reasons for failing to object to testimony on Lori's
behalf, nor does she explaining her trial counsel's actions at and prior to the suppression
hearing. We cannot say, on this record and without any explanation from counsel, that
counsel's failure to preserve his objections was not trial strategy. Goodspeed, 187 S.W.3d
at 393-94 (recognizing possible trial strategies and refusing to find ineffective assistance
of counsel without allowing counsel to respond); McBean v. State, 167 S.W.3d 334, 341
(Tex. App.-Amarillo 2004, pet. ref'd) (holding that appellant failed his burden by failing to
reference evidence of reasons for counsel's conduct). Given the lack of evidence of trial
counsel's true intentions, we are required to reject Lori's claim of ineffective assistance of
counsel. Goodspeed, 187 S.W.3d at 393-94. Because we find that Lori has not satisfied
the first element of Strickland, we need not determine whether the result would have been
different. Tex. R. App. P. 47.1. We overrule Lori's fourth issue. 

V. Conclusion

 For the above given reasons, the judgment of the trial court is AFFIRMED. 

 


 __________________________

 GINA M. BENAVIDES

 Justice


Do not publish.

See Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and

filed this the 23rd day of August, 2007.

1. Patrick was found not guilty.
2. We note that the court of appeals decision in Harris was reversed by the Court of Criminal Appeals
for failure to preserve the Franks issue, and the Court of Criminal Appeals did not reach the merits of the
Franks argument. Harris, 2007 Tex. Crim. App. LEXIS 809, at *5-7.

3. This Court has listed the factors that may be considered when determining whether the evidence
is sufficient to affirmatively link an accused person to a controlled substance: (1) the contraband was in plain
view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where
the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was
conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6)
a strong residual odor of the contraband was present; (7) the accused possessed other contraband when
arrested; (8) paraphernalia to use the contraband was in view, or found on the accused; (9) the physical
condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the
accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive
gesture; (13) the accused had a special connection to the contraband; (14) the occupants of the premises
gave conflicting statements about relevant matters; (15) the accused made incriminating statements
connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed
in a suspicious area under suspicious circumstances. Laissant v. State, 79 S.W.3d 736, 743 (Tex.
App.-Corpus Christi 2002, no pet.). The number of factors is not as important as their logical force in
establishing the elements of the offense. See Jenkins v. State, 76 S.W.3d 709, 713 (Tex. App.-Corpus Christi
2002, pet. ref'd). "The baseline is that proof amounting to a strong suspicion or even a possibility of guilt will
not suffice." In re J.M.C.D., 190 S.W.3d 779, 780 (Tex. App.-El Paso 2006, no pet.).