NUMBER 13-03-411-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 
                                                                                                                      

LEVIYAS JAMAIL CLAYTON,                                                    Appellant,

v.
 
THE STATE OF TEXAS,                                                     Appellee.
                                                                                                                                      

On appeal from the 183rd District Court of Harris County, Texas.
                                                                                                                      

O P I N I O N

Before Justices Hinojosa, Yañez and Garza
Opinion by Justice Garza
 
A jury convicted Leviyas Jamail Clayton of murder, and he was sentenced to thirty
years’ imprisonment. Clayton now appeals his conviction, arguing that the evidence was
legally and factually insufficient to prove he committed murder. Because we conclude that
the evidence is legally insufficient, we reverse the judgment of the trial court and enter a
judgment of acquittal. 
 
I.
At approximately noon on June 14, 2001, Angela Davis, an employee of the City of
Houston Animal Control Department, stopped near the entrance to Brock Park in Houston
to aid the driver of a pickup truck which had overturned and landed in a ditch. Davis’s
partner, Glen Hudson, was in another vehicle behind her and stopped as well. After being
on the side of the road for roughly ten to twenty-five minutes, Davis looked off into the park
and noticed something peculiar waving in the air. She drove over to investigate and
discovered James Playnonero laying in the grass, bleeding. Davis called 911, but
Playnonero died about ten minutes later.
Playnonero was found next to a white 1995 Toyota Avalon, which had been rammed
into a tree. The trunk and rear passenger door of the car were open. A tire rod was found
in the driver’s seat, and a bloodied tire iron was found in the car’s trunk. The fuel intake
manifold was open and had singe marks around it. Police discovered a wad of burned
paper lodged in the manifold and suspected that someone had tried to destroy the vehicle
by igniting the gas tank. The vehicle’s backseat and rear floorboard were soaked with
blood, and blood was found on the vehicle’s exterior. A two-foot wide trail of blood led from
the backseat of the car to Playnonero’s body, indicating that Playnonero might have
crawled from the backseat of the car to the spot where Davis found him. 
The medical examiner determined that Playnonero’s death resulted from loss of
blood caused by multiple gunshot wounds. According to the examiner’s autopsy report,
Playnonero was shot eight times: in both legs, the forearms, abdomen, penis, and neck. 
The ensuing police investigation yielded few leads. No eyewitnesses were
identified. Police forensics could not determine whether the gunshot wounds were inflicted
by a single gun or multiple guns, and no weapons were ever linked to the shooting. In
addition, the police could not determine whether Playnonero was shot inside or outside of
the car or whether the shooting took place in the park or at some other location. 
The fingerprints of two individuals other than Playnonero were discovered inside the
vehicle. The first set of prints belonged to Angel Ayala, the owner of the vehicle. Ayala
was initially investigated for the murder but was ultimately cleared of suspicion. 
Apparently, he had allowed Playnonero to borrow the car on the morning of the murder,
and Playnonero never returned it.
The second set of prints belonged to appellant. They were found on the vehicle’s
steering wheel and gear shift and on the middle console between the front seats of the car. 
The prints were what forensic experts call “transfer prints.” They resulted from appellant
touching objects in the car with blood on his hands. The blood belonged to Playnonero.
A warrant was issued for appellant’s arrest, and appellant was ultimately indicted
for the murder. At trial, the State offered no evidence other than the bloody fingerprints to
connect appellant to Playnonero and the murder. A police officer testified that Playnonero
was involved in the illegal drug trade. The officer speculated that the shooting resulted
from a drug deal gone bad. No other explanation for the murder or connection between
appellant and the victim was offered.
At trial, appellant took the stand in his defense. He testified that on the morning the
murder occurred, he drove to Brock Park to visit a female acquaintance named Tiffany
Woods. The couple had planned to meet at the park at noon. As he approached the
park’s entrance, appellant observed a “newer model” blue car rapidly exit the park. After
he entered the park, appellant looked for his friend but did not see her. He spotted a white
Avalon with its trunk and rear passenger door open. The vehicle was rammed against a
tree and its wheels were spinning. Appellant exited his vehicle and approached the
Avalon. As he drew closer, he saw a man sitting in the backseat with his hand hanging
outside the vehicle. The backseat was “full of blood.” Concerned for the man, appellant
grasped the man’s hand with his hands. He got into the driver’s seat and tried to drive the
car back onto the street, but the car was stuck in mud and would not move. Appellant put
the car into neutral gear. He then heard a loud noise and saw a pickup truck traveling at
a high rate of speed. The truck overturned and landed in a nearby ditch. This frightened
appellant and he fled. He drove a few miles to his home, where he went to his room and
cried. He never called the police and never told anyone about what happened. After being
arrested, appellant maintained that he did not know Playnonero and had never seen him
before the morning the murder occurred. 
II. 
When reviewing the legal sufficiency of evidence, we view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim.
App. 2003). We are not fact finders; our role is that of a due process safeguard, ensuring
only the rationality of the trier of fact’s finding of the essential elements of the offense
beyond a reasonable doubt. See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App.
1988). In purely circumstantial cases such as this, it is unnecessary for every fact to point
directly and independently to appellant’s guilt; it is enough if the conclusion is warranted
by the combined and cumulative force of all the incriminating circumstances. See Johnson
v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); Russell v. State, 665 S.W.2d 771,
776 (Tex. Crim. App. 1983) (en banc). 
To support a conviction for murder, the State had to prove that appellant (1)
intentionally or knowingly caused the death of James Playnonero by shooting him with a
firearm or (2) intended to cause serious bodily injury and committed an act clearly
dangerous to human life that caused the death of James Playnonero by shooting him with
a firearm. See Tex. Penal Code Ann. § 19.02(b) (Vernon 2003); Sanders, 119 S.W.3d at
820. The State failed to meet this burden. 
The evidence produced at trial establishes that someone attacked and killed
Playnonero with a firearm. Use of a firearm to cause death establishes that the perpetrator
acted with intent to commit murder. See Medina v. State, 7 S.W.3d 633, 637 (Tex. Crim.
App. 1999); Womble v. State, 618 S.W.2d 59, 64 (Tex. Crim. App. 1981). The deficiency
in the State’s evidence is that it does not establish that appellant was the person who used
a firearm to kill Playnonero. As the court of criminal appeals stated in Jones v. State:
The main fact to be proved was that the appellant fired the bullet which killed
the deceased into the deceased’s forehead. None of the evidence
connected with the murder directly demonstrates the main fact. The
fingerprints that were “lifted” from the cold Schlitz beer can proved that the
appellant handled the beer can sometime during the morning of the murder,
but prior to the time when the police arrived. They did not prove that the
appellant fired the bullet which killed the deceased.
 
Jones v. State, 568 S.W.2d 847, 859 (Tex. Crim. App. 1978) (en banc). Similarly, in this
case, the fingerprints do not prove that appellant fired the weapon that was used to kill
Playnonero. 
          The bloody fingerprints prove that appellant was with the victim after the shooting;
however, they are not evidence that appellant was with the victim before the shooting, and
an inference to that effect can be reached only by first assuming that appellant was the
perpetrator of the murder and then working backwards. The evidence does not prove that
appellant had an opportunity to kill the victim. Instead, it proves that appellant was present
at the crime scene after the murder, but mere presence is not enough to prove guilt. See
Solomon v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); Medina, 7 S.W.3d at 641;
Miles v. State, 918 S.W.2d 511, 515 (Tex. Crim. App. 1996). Failing to notify authorities
of a crime is also not enough. See Medina, 7 S.W.3d at 641. 
          Although courts have upheld murder convictions based solely on circumstantial
evidence, such cases have often involved proof of motive in addition to other incriminating
circumstances. See Ates v. State, 21 S.W.3d 384, 390 (Tex. App.—Tyler 2000, no pet.)
(holding that proof of motive could be inferred from absence of victim’s purse and victim’s
refusal of defendant’s sexual advances); Reeves v. State, 969 S.W.2d 471, 479 (Tex.
App.—Waco 1998, pet. ref’d) (holding that defendant had motive because victim did not
love him anymore and did not want to be around him and defendant was jealous of victim’s
other intimate relationships). Although motive is not an element of murder, when identity
is called into question, as it is here, proof of motive might be the glue that holds the entire
case together. See Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (“Motive
is a significant circumstance indicating guilt.”); King v. State, 29 S.W.3d 556, 565 (Tex.
Crim. App. 2000 ) (noting proof of motive along with other incriminating evidence, including
DNA evidence and a letter admitting involvement in the murder). At trial, the State
produced no evidence that appellant was connected to the victim in any way. In fact, the
testimony from the State’s witnesses indicated that the police had investigated the
relationship between appellant and Playnonero and uncovered no connection whatsoever. 
A detective who investigated the murder opined at trial that because the victim was
involved in the illegal drug trade, the murder could be drug-related. Such strained
speculation is far too weak and attenuated a connection to prove a motive sufficient to
establish beyond a reasonable doubt appellant’s identity as the murderer. 
          The State has produced no precedent to establish that the evidence in this case is
sufficient to prove appellant committed the murder, and we are unaware of any case
upholding a conviction based on similar evidence. Accordingly, we reverse the conviction
and order a judgment of acquittal.                                                                 
 
                                                                                      _______________________
DORI CONTRERAS GARZA,
                                                                                      Justice
 
Publish. 
Tex.R.App.P. 47.2(b)
Opinion delivered and filed 
this the 5th day of May, 2005.