NUMBER 13-03-00411-CR


COURT OF APPEALS
 


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


LEVIYAS JAMAIL CLAYTON, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 183rd District Court of Harris County, Texas.

 


MEMORANDUM OPINION ON REMAND


Before Chief Justice Valdez and Justices Yañez and Garza


Memorandum Opinion on remand by Justice Garza



 Appellant, Leviyas Jamail Clayton, was convicted of murder and sentenced to thirty
years' imprisonment. See Tex. Penal Code Ann. § 19.02(b) (Vernon 2003). On original
submission, we found that the evidence adduced at trial was legally insufficient to sustain
Clayton's conviction. See Clayton v. State, 169 S.W.3d 254 (Tex. App.-Corpus Christi
2005), rev'd, 235 S.W.3d 772 (Tex. Crim. App. 2007). The Texas Court of Criminal
Appeals reversed, holding that the evidence met the standard for legal sufficiency. See
Clayton v. State, 235 S.W.3d 772, 782 (Tex. Crim. App. 2007). We now consider on
remand whether the evidence was factually sufficient to prove that Clayton committed
murder. Because we find that the evidence was factually sufficient, we affirm the judgment
of the trial court.

I. Background

 While driving near the entrance of Houston's Brock Park in the early afternoon of
June 14, 2001, Houston Animal Control employee Angela Davis observed a pickup truck
lose control in front of her and overturn into a ditch. Davis and her partner stopped their
vehicles and provided assistance. About ten to twenty minutes after they stopped, Davis
noticed something moving inside the park; upon further investigation, she discovered a
man, James Playonero, covered in blood and apparently suffering from several gunshot
wounds. Playonero attempted to communicate, but Davis could not understand his
mumbling. Although Davis called the police for assistance, Playonero died before any
medical attention could be rendered. Davis testified at trial that, from the time she stopped
to assist the driver of the truck that veered off the road to the time she went to investigate
the movement in the park, she did not see or hear any other people or vehicles enter or
exit the park.

 Davis further testified that she found Playonero lying on the ground near a white
1995 Toyota Avalon, which had its trunk and rear door open; the vehicle appeared to have
rolled up against a tree. A trail of blood leading from the car indicated that Playonero had
crawled out of the rear passenger compartment of the Avalon and collapsed where he was
found. Upon further investigation of the Avalon, police discovered that the gearshift was
in neutral and the ignition was in the accessory position. The police also found a tire iron
on the front seat, which they suspected had been wedged against the accelerator so that
the car would propel itself into the trees, and a wad of charred paper lodged in the fuel tank
filler neck, indicating that someone had tried to destroy the car by igniting the tank. The
vehicle's back seat and rear floorboard were soaked with blood, and a moderate amount
of blood was found on the vehicle's exterior.

 Roger Milton, M.D., an assistant medical examiner with the Harris County Medical
Examiner's Office, testified at trial that Playonero was shot eight times at close range and
died within five to ten minutes after suffering the wounds. Milton also testified that it was
impossible for Playonero to have lived for twenty to thirty minutes after receiving those
gunshot wounds.

 Sergeant Boyd Smith of the Houston Police Department, who was one of the first
police officers to arrive at the scene, testified that he suspected that Playonero's murder
was the result of a drug deal gone bad. He based this opinion on the fact that both
Playonero and Angel Ayala, the owner of the vehicle, were Colombian, and because of the
nature of Playonero's wounds. (1)

 Al Padilla, an investigator with the Houston Police Department, testified that he
identified fingerprints on the Avalon belonging to Playonero, Clayton, and Ayala. (2) The
fingerprints belonging to Clayton were found on the Avalon's steering wheel and gearshift,
as well as on the center console between the car's front seats. Clayton's prints were
caused by his touching the steering wheel, gearshift, and center console with Playonero's
blood on his hands.

 Officer Jesus Sosa of the Houston Police Department was assigned to investigate
Playonero's death. Officer Sosa testified that his investigation produced no evidence
directly linking Clayton to Playonero other than the bloody fingerprints found at the crime
scene. No eyewitnesses were identified, and no murder weapon was found. However, a
warrant was issued for Clayton's arrest eight days after Clayton was identified through the
bloody fingerprints.

 Sosa testified that he and his partner attempted to locate Clayton for a week after
the warrant was issued. Sosa testified that he advised Clayton's grandmother, mother,
girlfriend, and father's girlfriend about the outstanding warrant. Clayton was not arrested
until he was stopped for a traffic violation in March 2002, some eight months after the
incident at Brock Park.

 Clayton, testifying in his defense, stated that he drove to Brock Park on the morning
of June 14 in order to meet an acquaintance, Tiffany Woods. Clayton testified that, as he
approached the entrance to the park, he observed a blue car exit the park at a high rate
of speed. He testified that, upon entering the park, he looked for Woods but did not find
her; he did, however, find the white Avalon with Playonero's left hand hanging outside the
rear passenger compartment of the vehicle. Clayton then described what he did next:

 Q. [Defense counsel] When you got up to the vehicle, what else, if
anything, did you notice at the vehicle?


 A. [Clayton] That there was a man in the backseat.


 Q. A man laying in the backseat?


 A. Yes, sir.


 Q. What did you notice about the man?


 A. That he was full of blood, sir.


 Q. When you noticed this man in the backseat full of blood, what did you
do?


 A. I reached out and touched him, sir.


 Q. What did - why did you touch him?


 A. Because he was mumbling, and I couldn't understand what he was
saying.


 Q. After you reached and touched the man, did you do anything else as
far as the car is concerned?


 A. Yes, sir.


 Q. What did you do?


 A. I ran around the driver's side of the door. I got in the car and I tried
to put the car in reverse, but the gravel around the car was - where
the ground was wet and the mud was, the car wouldn't move.


 Clayton testified that he then saw a pickup truck, traveling at a high rate of speed,
veer off the road and overturn in a nearby ditch. Clayton testified that he panicked at that
point, got out of the Avalon, returned to his car, and left the park, passing the Animal
Control officers' vehicles as he departed. Clayton then returned to the house that he
shared with his grandmother. On cross-examination, Clayton admitted that he did not call
the police or tell anyone else about what he had seen. He testified that he did not know
about the warrant until his arrest on a traffic violation eight months later.

 After trial, a jury convicted Clayton of murder and sentenced him to thirty years'
imprisonment. Clayton appealed his conviction, and this Court found that the evidence
was legally insufficient to support the jury's verdict, relying primarily on Solomon v. State,
49 S.W.3d 356, 361 (Tex. Crim. App. 2001) (mere presence is not enough to prove guilt)
and Medina v. State, 7 S.W.3d 633, 637 (Tex. Crim. App. 1999) (failing to notify authorities
of a crime is not enough to prove guilt). See Clayton, 169 S.W.3d at 258. The court of
criminal appeals reversed, noting that the amount of blood found on Clayton's fingerprints,
along with Davis's testimony that no other vehicles left the park, Clayton's sudden flight
from the crime scene, and his failure to turn himself in to police on the arrest warrant,
constituted legally sufficient circumstantial evidence to support a finding of guilt. See
Clayton, 235 S.W.3d at 780. We now consider whether the evidence was factually
sufficient to sustain the jury's guilty verdict.

II. Discussion

A. Standard of Review

 When reviewing the factual sufficiency of the evidence to support a conviction, we
view all the evidence in a neutral light, favoring neither party. Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006); Drichas v. State, 175 S.W.3d 795, 799 (Tex. Crim. App.
2005). We then ask (1) whether the evidence supporting the conviction is so weak that the
fact-finder's determination is clearly wrong and manifestly unjust, or (2) whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's
determination is manifestly unjust. Watson, 204 S.W.3d at 414-15, 417; Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence contradicts the verdict. Watson, 204 S.W.3d at 417. 
A factual sufficiency review requires the reviewing court to consider all of the evidence. 
Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

 In determining whether the evidence is factually insufficient to support a conviction,
it is not enough that this Court "harbor a subjective level of reasonable doubt to overturn
[the] conviction." Id. We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or because we
disagree with the jury's resolution of a conflict in the evidence. Id. We may substitute our
judgment for that of the jury on credibility and weight questions, "albeit only to a very limited
degree." Marshall, 210 S.W.3d at 625. We will reverse a verdict of guilty on a factual
sufficiency challenge only when we can say, with some objective basis in the record, that
the great weight and preponderance of the evidence contradicts the jury's verdict. Watson,
204 S.W.3d at 417. We must give due deference to the fact-finder's determinations,
particularly those determinations concerning the weight and credibility of the evidence. 
Johnson, 23 S.W.3d at 9.

 To support a conviction for murder, the State had to prove that Clayton (1)
intentionally or knowingly caused Playonero's death by shooting him with a firearm or (2)
intended to cause serious bodily injury and committed an act clearly dangerous to human
life that caused Playonero's death by shooting him with a firearm. See Tex. Penal Code
Ann. § 19.02(b); Sanders v. State, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). 

B. Analysis

 The evidence at trial established the following circumstances without dispute: 
Clayton was present inside the Avalon shortly after Playonero was shot; Clayton fled the
scene when he saw a pickup truck overturn in his vicinity; Clayton did not inform the
authorities about what he had seen; and the warrant for his arrest was outstanding for eight
months before Clayton was detained. Clayton's explanation for his presence in the Avalon
was that he was trying to save Playonero's life by pulling his vehicle out of the mud, but
Clayton could not explain to the jury why it was necessary for him to commandeer
Playonero's vehicle in order to accomplish that. Further, Clayton could not explain why it
was necessary to touch Playonero's hand, nor could he explain how touching Playonero's
relatively clean hand resulted in the accumulation of blood on Clayton's hands sufficient
to transfer bloody fingerprints to the steering wheel, gearshift, and center console. Finally,
Clayton could not explain why, if he was attempting to save Playonero's life, he failed to
take the extra life-saving step of notifying the police of Playonero's condition after he had
fled the scene. (3)

 In a prosecution based on circumstantial evidence, it is not necessary that every fact
point directly and independently to the guilt of the accused; rather, the cumulative effect
of all the incriminating facts may be sufficient to warrant a conclusion of guilt. See Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); Guevara v. State, 152 S.W.3d 45, 49
(Tex. Crim. App. 2004). Here, weighing Clayton's dubious story against the cumulative
force of the incriminating circumstantial evidence, and giving due deference to the jury's
determinations as to the weight of the evidence and the credibility of witnesses, we cannot
say that the evidence offered at trial, as a whole, clearly revealed that the conviction was
inappropriate. See Johnson, 23 S.W.3d at 8, 9.

 After considering all of the evidence adduced at trial, we conclude that the jury's
verdict is not so contrary to the weight of the evidence as to be clearly wrong or manifestly
unjust. Watson, 204 S.W.3d at 414-15, 417. Accordingly, we find that there was factually
sufficient evidence to support the verdict.

III. Conclusion

 The judgment of the trial court is affirmed.


 _______________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish.

Tex.R.App.P. 47.2(b)

Opinion delivered and filed

this the 5th day of June, 2008.
1. Sergeant Smith testified as follows regarding Playonero's gunshot wounds:


The fact that he was shot in both legs, twice in both legs, once in the forearm, once through
and through in the flesh and the stomach, shot in the penis, shot in the middle of the back
of the neck, they were torturing him or trying to get information or getting information from
something over a bad drug deal.
2. Ayala was initially investigated for the murder, but was ultimately cleared of suspicion after he
informed a police officer that he had loaned the car to Playonero on the morning of June 14 and was at home
alone when Playonero was shot.
3. We note that the only evidence tending to establish a motive for Clayton to murder Playonero was
Sergeant Boyd's testimony that he believed Playonero's death was the result of a drug deal gone bad. 
However, although motive is a significant circumstance indicating guilt, Guevara v. State, 152 S.W.3d 45, 50
(Tex. Crim. App. 2004), it is not an element of murder and need not be proved to support a murder conviction.
Lerma v. State, 632 S.W.2d 893, 895 (Tex. App.-Corpus Christi 1982, pet. ref'd) (citing Garcia v. State, 495
S.W.2d 257 (Tex. Crim. App. 1973)).